**Pozonsky v. Pozonsky**

C.P. of Washington County, no. 99-2943.

*Thomas Mulroy,* for plaintiff.
*Samuel Davis,* for defendant.

FEUDALE, *S.J.,* May 7, 2001—Before the court are a petition and supplemental petition for contempt for alleged noncompliance with a partial custody order of court. The petitioner/Mother, Mary Duffy Pozonsky, and respondent/Father, Paul M. Pozonsky, are the parents of two daughters, Kira, d.o.b. November 5, 1987, and Alexis, d.o.b. March 5, 1992.

Since the respondent is a judge of the Washington County Court of Common Pleas, the local bench had previously recused itself when there were prior legal filings regarding disputes between the parties and issues involving custody of the children.

Heretofore, the issues were resolved without any record hearings via stipulations after requests for consultation with the court, and counsel's consultation with the parties.

However, in this case, given the assertion in the first petition that Mother agreed to striking a provision in a proposed order based on a non-record representation that Father allegedly made to this court, we will decline to participate in any further non-record discussions in this case.

We turn to the allegations in the first petition. Mother alleges in paragraph 3 that since the date of the November 16, 2000 order "Father has failed and refused to take the children to C.C.D. (Confraternity Christian Doctrine) education classes despite the fact that he represented to the court that he intended to comply."

In paragraph 5, Mother alleged "Beyond the allegations set forth above, Father agreed to allow the children to go to C.C.D. classes whether or not they were specifically focused on preparation for and reception of the sacraments of Holy Communion and confirmation.

In paragraph 6, Mother again referencing violation of the C.C.D. provision states that Father's actions are in contempt of the court's prior orders.

The relevant section of paragraph 4(a) of the stipulated order of court dated September 23, 1999, provides as follows:

"On the Sunday of Father's custody, Father will take children to C.C.D. education from 9:15 a.m. to 10:30 a.m. if the Father and children are not on vacation, and if such C.C.D. education is a necessary requirement for Kira to receive her confirmation and for Alexis to receive her first Holy Communion."

The relevant C.C.D. section of the stipulated order dated November 16, 2000 (this further modified and clarified the September 23, 1999 order) which section was manually stricken by the court after consultation with Father and counsel, provided as follows:

"(1) When the children are in Father's custody on Sunday, Father will take the children to C.C.D. education from 9:15 a.m. to 10:30 a.m. if Father and children are not on vacation."

During her testimony, Mother stated she, Father and the children attended the same church when they lived together and they took a "vow" when the children were baptized to apparently raise the children in the Catholic faith. Mother indicated that while Father had previously

taken both children to C.C.D. classes, he stopped doing so when Alexis received her first Holy Communion. To date, neither of the children have been confirmed. Mother also noted that she believes the reason paragraph 1 of the modified order was stricken, was because Father felt such suggested prior noncompliance and that it was unnecessary, since it was in the first order.

Father, when asked by his attorney about the stricken paragraph and whether he indicated he was not going to follow the order, stated he was "ready, willing and able to do so" and felt he had complied with the order. He testified he took Alexis to the C.C.D. classes so she could make her Holy Communion, and acknowledged that he has not taken either of the children to C.C.D. since that time.

Father further testified he did not take the children because he attends another church, and he only agreed to take the children to C.C.D. if it was a necessary requirement for them to receive their Holy Communion or be confirmed. When asked how he knew C.C.D. was not a condition to receipt of the aforesaid, he initially claimed he contacted the diocese. Later, he explained he spoke to a priest he went to law school with as to what the requirements are.

Paragraph 2 of the supplemental petition for contempt alleged the following:

"(a) Pursuant to paragraph 11 of the court's order of September 23, 1999, neither of the parties are to make disparaging remarks of the other party in the presence of the children. The defendant has repeatedly violated this provision.

"(b) The defendant removed his daughter, Kira, from school without knowledge of petitioner and without mutual agreement as required in paragraph 13 of the court's order of September 23, 1999.

"(c) Father has consistently altered the schedule to coincide with his own agenda without consultation or agreement of petitioner.

"(d) The defendant has removed both girls from school, without consultation with the petitioner, in order to facilitate weekend vacation plans.

"(e) Pursuant to the terms of the court's order of November 16, 2000, if Father is traveling during a period of time when the children were to be in his custody, and the children are not accompanying him, then Father was to first offer to Mother the right to have custody of the children before making other child-care arrangements. Father has violated this provision by leaving the children in the care and custody of another person without first contacting Mother."

Counsel for Father objected to Mother testifying to alleged disparaging comments the children told Mother that Father allegedly made, as well as any testimony about conduct that occurred since filing the original petition in January of 2001, since the supplemental petition was not filed until Match 23, 2001. We sustained the first objection based on hearsay and the latter based on the lack of factual specificity in the petition as to alleged disparaging remarks, and the late filing of the supplemental petition.

However, while there was no further testimony regarding Father's alleged disparaging remarks against Mother

in the presence of the children, the issues regarding Father removing the children from school without consultation or agreement of Mother, and Father not using Mother as an alternative caretaker when Father has custody, while he is traveling and the children are not accompanying him, were addressed.

The allegedly relevant sections of the custody orders provided as follows:

"(13) Notwithstanding any of the above, the parties may make any other arrangements as to physical custody as they may mutually agree.

"(3) If either of the parents are traveling during a period of time when the children are to be in their custody, and the children are not with the traveling parent, then that parent will first offer the other parent the right to have custody of the children, before making arrangements for child-care with any other person."

Father acknowledged that the children have not attended school on various occasions over the year. He did not feel such was a violation of the order and indicated it has not occurred often. He testified that on occasion when he had the children after school on Thursday, they would go to Seven Springs. He noted that both girls are straight A students who receive high honors.

Finally, Father admitted that on one occasion when he had custody of the girls, he did go deer hunting on the first day of buck season and left Sunday at 5 p.m. and returned the following day at 5 p.m. and indicated that the children did remain overnight with his present wife.

## RELEVANT LAW

23 Pa.C.S. §4346—Contempt for noncompliance with visitation or partial custody order provides as follows:

"(a) General rule—A party who willfully fails to comply with any visitation or partial custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

"(1) Imprisonment for a period not to exceed six months.

"(2) A fine not to exceed $500.

"(3) Probation for a period not to exceed six months.

"(4) An order for non-renewal, suspension or denial of operating privilege pursuant to section 4355 (relating to denial or suspension of license)."

A conviction for contempt of court can be sustained only if the order is definite, clear, specific and leaves no doubt or uncertainty in the mind of whoever it is addressed to. *Brinker v. Brinker,* 34 D.&C.3d 109 (1985).

A petition for civil contempt must allege the facts which constitute willful failure to comply with the custody, partial custody or visitation order, a copy of which must be attached to the petition. Pa.R.C.P. 1915.12.

Finally, visitation and child custody matters will be enforced according to the best interest of the child and as with support orders, advisory effect will be given to the agreement but without binding effect on the court when it is not in the best interest of the child or children. *Thomson v. Rose,* 698 A.2d 1321 (Pa. Super. 1997), *appeal denied,* 552 Pa. 697, 716 A.2d 1249 (1998).

## DISCUSSION

Clearly, Mother has placed an important priority on the children's religious education and their participation in certain sacraments of the Catholic church. Such was addressed in the first order and was the first (albeit stricken) paragraph of the second order, and was the main focus of her first contempt petition.

Father, who asserts he is ready, willing and able to comply with the C.C.D. provisions, somewhat inconsistently notes he took Alexis to C.C.D. classes so she could make her Holy Communion, while later stating such based on his uncorroborated contacts with the diocese or a priest with whom he went to law school, is not a condition precedent to receipt of Holy Communion and confirmation. Father also mixes the proverbial apples and oranges when he stated he did not take them to C.C.D. because he attends another church.

While no case citation is needed to confirm the right of a parent to practice and have their children participate in a religion of their choice, the C.C.D. classes are characterized as an education program. Such does not preclude his attending separate services with the children.

However, a strict reading of paragraph 4(a) of the September 27, 1999 order provides for C.C.D. education *if* such is a necessary requirement for Kira to receive her confirmation and for Alexis to receive her first Holy Communion.

In all candor, we do not know, based on the evidence presented, if such is a requirement, but presently there is an insufficient basis for contempt. As to our own recollection of what the Father told the court and the reason

why we struck the first paragraph in the second order, we decline to engage in commentary dehors the record, but we will not engage in such future off the record discussions, at least in this case.

Next is the issue of Father not getting the consent of, advising the Mother, or ensuring the children are in school on various occasions. Once again, the specific provision in the order relied upon by Mother lacks definite, clear, and specific language, that would justify a willful non-compliance with an order of court. While the failure of a child to attend school (truancy) is covered under other statutory provisions (and we do not infer such is applicable herein), there is no clear and specific provision that addresses such in the custody order of court.

Finally is the Father's overnight deer hunting trip, while he had custody of the children, where the children remained with his current wife. Paragraph 3 of the stipulated modified order dated November 16, 2000, clearly, and specifically, provides for what we often refer to as the non-custodial parent right of first access/refusal provision, when a custodial parent is relying on an alternative caretaker.

While we find Father violated this provision of the order, we also find that in this narrow circumstance, an enforcement sanction is not in the best interest of the children.

As both able counsel for the parties note in their closing arguments, these parents have significant difficulty in communicating with each other. We suspect Mother may feel that Father, being a judge, has received deferential treatment from this court. We can only state that all persons stand equally before this court, regardless of

their standing or lack thereof in the community. However, we also have observed in our many years as a social worker, lawyer, and judge, that good people when involved in emotion-laden family disputes, exercise poor judgment, or do things contrary to their nature. We caution Father, however, that unlike the parties, we have no difficulty in communicating, that any future willful violation of a clear and specific order of court may result in his walking as compared to driving to work.

## ORDER

And now, May 7, 2001, notwithstanding an isolated violation of a custody order of court, this court finds that it is not in the best interest of the children to enter any adjudication of contempt and therefore, both petitions for contempt are hereby dismissed.

It is further ordered that in accordance with the agreement of counsel that the court could address the ambiguity in the custody rotation schedule, the court will authorize Mother to select the rotation commencement date. Counsel for the Mother shall, after consultation with counsel for the Father, prepare an appropriate clarifying order for the court's execution within 15 days of the date of filing this order.